WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathleen Cathy Muhammad, | No. CV-16-00799-PHX-BSB |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, | |
| Defendant. | |

Plaintiff Kathleen Cathy Muhammad seeks judicial review of the final decision of the Commissioner of Social Security (the Commissioner) denying her application for benefits under the Social Security Act (the Act).  The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b), and have filed briefs in accordance with Rule 16.1 of the Local Rules of Civil Procedure.  As discussed below, the Court reverses the Commissioner's decision and remands for further proceedings.

## I.     Procedural Background

In February 2012, Plaintiff filed applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Act.  (Tr. 12.)[1] Plaintiff alleged a disability onset date of February 10, 2012.  (*Id*.)  After the Social Security Administration (SSA) denied Plaintiff's initial application and her request for reconsideration, she requested a hearing before an administrative law judge (ALJ).  (*Id.*)

---

[1] Citations to Tr. are to the certified administrative transcript of record.  (Doc. 14.)

After conducting a hearing, the ALJ issued a decision finding Plaintiff not disabled under the Act.  (Tr. 12-23.)  This decision became the final decision of the Commissioner when the Social Security Administration Appeals Council denied Plaintiff's request for review.  (Tr. 1-6.)  *See also* 20 C.F.R. § 404.981 (explaining the effect of a disposition by the Appeals Council).   Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

**II.    Administrative Record**

The record before the Court establishes the following history of diagnoses and treatment related to Plaintiff's alleged impairments.   The record also includes several medical opinions.

**A.    Medical Treatment Evidence**

**1.    First Medical Plus**

In July 2011, Plaintiff began treatment at First Medical Plus (FMP) for injuries she sustained in a car accident earlier that month.  (Tr. 331.)  Dr. Lucinda R. Michel, D.O., provided most of Plaintiff's treatment before the disability onset date.  She diagnosed headaches, neck and back pain and strain, and upper and lower radiculopathy.  (Tr. 321-30.)  In February 2012, Plaintiff complained of worsening headaches, spinal symptoms, and pain or parasthesias in her upper extremities.  (Tr. 320.)  Dr. Michel gave Plaintiff a Toradol injection and prescribed medication.  (Tr. 302, 545, 1238.)

In May 2012, Nurse Practitioner (NP) Laura Coe assumed Plaintiff's care at FMP.  (Tr. 304.)  Plaintiff complained of headaches, neck and back pain, pain in her upper and lower extremities, and right shoulder pain.  (Tr. 304.)  On examination, NP Coe assessed Plaintiff with parasthesias, hand weakness, cervical, thoracic and lumbar pain, arm and hand pain, shoulder pain, and sleep disturbances.   (*Id.*)   At that time, Plaintiff was pregnant and declined medications.  (*Id.*)  NP Coe continued to treat Plaintiff during the relevant period and frequently recorded similar observations of Plaintiff's condition.  (Tr. 303, Jun. 21, 2012; Tr. 458, July 2012 ("not pregnant," medications continued, with the addition of Vicodin); Tr. 455-56, Aug. 10, 2012; Tr. 453-54, Aug. 24, 2012; Tr. 451-

52, Sept. 21, 2012; Tr. 449-50, Oct. 4. 2012; Tr. 496-97, Dec. 14, 2012; Tr. 855-56, Feb. 19, 2013; Tr. 851-52, Apr. 5, 2013; Tr. 845-46, June 14, 2013; Tr. 833-34, Sept. 27, 2013; Tr. 825-26, Oct. 25, 2013; Tr. 822-23, Dec. 30, 2013; Tr. 820-21, Feb. 28, 2014; Tr. 817-18, Apr. 25, 2014; Tr. 812-13, May 30, 2014; Tr. 809-10, June 16, 2014.) However, other treatment notes include limited findings and do not mention Plaintiff's back or shoulder pain.  (Tr. 853-54, Mar. 5, 2013 (no pedal edema in lower extremities, elevated blood pressure); Tr. 849-50, Apr. 19, 2013 (no edema in lower extremities, hypertension (HTN)); Tr. 847-48, May 10, 2013 (HTN); Tr. 843-44, June 28, 2013 (no edema in lower extremities, HTN); Tr. 841-42, July 19, 2013 (pain in big toe, no edema, HTN); Tr. 839-40, Aug. 1, 2013 (no edema, big toe pain, HTN); Tr. 829-30, Oct. 4, 2013 (pelvic density x-ray showed increased density over sacrum, hip pain).)

### 2.    Sonoran Pain Management

In 2011, Dr. Michel referred Plaintiff to Dr. Minesh Zaveri, D.O., at Sonoran Pain Management.  (Tr. 236-38.)  On examination, Dr. Zaveri noted that Plaintiff walked with a painful gait and had tenderness throughout her cervical and lumbar spine.  (*Id.*)  Plaintiff had full strength in her upper and lower extremities and a normal range of motion in her lumbar spine.  (Tr. 237.)  Dr. Zaveri diagnosed cervical and lumbar degenerative disc disease and spondylosis.  (*Id.*)  Dr. Zaveri gave Plaintiff lumbar epidural steroid injections on December 20, 2011 (Tr. 232), and lumbar medial branch nerve blocks on April 10 and 24, 2012.  (Tr. 220, 218.)  During a May 9, 2012 appointment, Plaintiff reported that the injections provided pain relief for twelve hours. (Tr. 366.)  On examination, Plaintiff had a positive straight leg raise test, full strength in her upper and lower extremities, tenderness in her cervical, thoracic and lumbar spine, and a painful gait.  (Tr. 367-68.)

### 3.    Dr. Bogdan Anghel

On referral from Dr. Michel, Plaintiff sought treatment from Dr. Bogdan Anghel at Pain Management and Rehabilitation Medicine Center for shoulder pain in October 2012.  (Tr. 785.)  Dr. Anghel reviewed an MRI that showed evidence of a rotator cuff

tear.  (*Id.*)  Plaintiff reported that she had received physical therapy and pain management for her shoulder pain and that the treatment was unsuccessful.  (*Id.*)  On examination, Plaintiff's shoulder was positive for pain.  (*Id.*)  Neer and Hawkins range-of-motion tests were positive for a rotator cuff tear on the right side.  (*Id.*)  Plaintiff had spine tenderness and a positive Spurling test.  (*Id.*)  Plaintiff had weakness on abduction and external rotation of her right arm.  (*Id.*)  Dr. Anghel diagnosed right shoulder rotator cuff tendinopathy.  (*Id.*)  He administered a steroid injection and referred Plaintiff to Dr. Jeffrey S. Levine, M.D.  (Tr. 785-86.)

On January 17, 2013, Plaintiff returned to Dr. Anghel for low back and hip pain. (Tr. 779-80.)  Plaintiff reported that lumbar epidural steroid injections in May 2012 had provided some relief, but the pain had returned.  (*Id.*)  On examination, Plaintiff had a normal gait, weakness, decreased sensation in her lateral thighs, calves and feet, and a restricted range of motion.  (*Id.*)  Dr. Anghel diagnosed lumbar spondylosis with facet pain, mechanical back pain, and lumbosacral radiculitis.  (Tr. 780.)

On January 28, 2013, Dr. Anghel gave Plaintiff lumbar injections of Kenalog and Marcaine.  (Tr. 777.)  In February 2013, Plaintiff reported that she was "improving." (Tr. 733.)  Dr. Anghel noted that the injections resolved Plaintiff's low back pain, but not her neck pain.  (*Id.*)  On examination, Plaintiff had right shoulder pain and a decreased range of motion in her cervical spine.  (*Id.*)  In February 2013, Dr. Anghel administered Kenalog and Marcaine injections in the cervical spine.  (Tr. 772.)

In May 2013, Dr. Anghel examined Plaintiff for recurrent pain in the right cervical and lumbar spine.  (Tr. 769.)  He found that Plaintiff had an antalgic gait, tenderness and pain in her head and neck, and a limited range of motion in her neck and back.  (Tr. 769.) Plaintiff had no pain on palpation of her hips or extremities, had full range of motion in her upper and lower extremities, and had full muscle strength in her hips and upper and lower extremities.  (Tr. 770.)  Dr. Anghel concluded that prior pain control treatments were ineffective.  (Tr. 770.)  Later that month, Dr. Anghel administered Kenalog and Marcaine injections for cervical and lumbar spondylosis.  (Tr. 767, 765.)  During a May

21, 2013 appointment, Dr. Anghel noted that the spinal injections did not provide Plaintiff significant pain relief.  (Tr. 763.)  He opined that Plaintiff's pain was likely generated in the musculature and, therefore, recommended trigger point injections on a bi-weekly basis.  (*Id.*)  On examination, Plaintiff had a limited range of motion in her cervical and lumbar spine, tenderness on palpation of the cervical and lumbar paraspinals, and pain in the lumbar and cervical paraspinals.  (*Id.*)  She had normal muscle strength and reflexes.  (*Id.*)

### 4.    Jeffery S. Levine, M.D.

As noted above, while Plaintiff was receiving treatment from Dr. Anghel, he referred Plaintiff to Dr. Levine for right shoulder pain.  (Tr. 758.)  Dr. Levine examined Plaintiff on November 2, 2012.  (Tr. 758-60.)  Plaintiff reported that she had neck, right shoulder, and low back pain.  (*Id.*)  She also reported that a recent corticosteroid injection to her right shoulder improved her pain, but she remained symptomatic.  (Tr. 758.)  On examination, Plaintiff had a full range of motion in her cervical spine, a "full range of motion of passive motion" in the right shoulder, and positive impingement signs in the right shoulder.  (Tr. 759.)  Dr. Levine diagnosed cervical strain and "symptomatic right partial tear of rotator cuff with the possibility of concomitant labral pathology."  (*Id.*)  Dr. Levine noted that Plaintiff was pregnant at the time, therefore, he did not prescribe injections and recommended against the use of anti-inflammatories and narcotics.  (*Id.*)

During a December 12, 2012 appointment with Dr. Levine, Plaintiff reported significant pain in her right shoulder.  (Tr. 757.)  She reported that a cortisone injection resulted in a "substantial decrease in her symptoms," but the pain had returned.  (*Id.*)  Plaintiff also reported neck pain.  (*Id.*)  On examination, Plaintiff had a full range of motion of the neck, a "relatively full range of motion of the right shoulder," and positive impingement signs.  (*Id.*)  Dr. Levine diagnosed symptomatic partial tear of the rotator cuff and possible labral pathology of the right shoulder.  (*Id.*)  Dr. Levine recommended and administered a corticosteroid injection to Plaintiff's right shoulder.  (Tr. 757.)

During a January 2013 appointment, Plaintiff reported persistent pain in her right shoulder.  (Tr. 753.)  On examination, Plaintiff had a drooping right shoulder, positive impingement signs, and positive labral loading signs.  (*Id.*)  Dr. Levine noted that MRI results showed "evidence of labral pathology which is chronic in nature involving both a complete tear and degeneration," along with "evidence of rotator cuff tendinopathic changes."  (*Id.*)  Dr. Levine diagnosed "[s]capular dyskinesia of the right shoulder with evidence of labral pathology."  (Tr. 753.)  Dr. Levine advised Plaintiff that she had two treatment options: (1) a corticosteroid injection to the shoulder and a strengthening program; or (2) surgical reconstruction of the labrum.  (*Id.*)  Plaintiff elected the injection and strengthening program.  (*Id.*)  Dr. Levine informed Plaintiff that if she did not improve, surgery would be the only other means of treatment.  (*Id.*)  Plaintiff told Dr. Levine that she would "consider surgery."  (*Id.*)  Dr. Levine administered a right shoulder steroid injection and noted that after the procedure, Plaintiff's "pain was completely abolished and her drooping shoulder was no longer present."  (*Id.*)

During an April 18, 2013 appointment with Dr. Levine, Plaintiff reported that she had seen Dr. Anghel and had a spinal block.  (Tr. 752.)  Plaintiff stated she did not experience pain relief, but "her radicular pain seem[ed] to be somewhat improved."  (*Id.*)  Plaintiff reported ongoing right shoulder pain.  (*Id.*)  On examination Plaintiff had a limited range of motion in her neck, drooping of the right shoulder, and pain with impingement.  (*Id.*)  Dr. Levine noted that Plaintiff had evidence of referred pain from discogenic cervical disease into the right scapular region.  (*Id.*)  He also noted evidence of a right labral tear and a partial rotator cuff tear.  (Tr. 752.)  However, because Plaintiff experienced pain relief after a trigger point injection, Dr. Levine opined, "surgery is still not indicated with respect to the shoulder itself."  (*Id.*)

During an April 29, 2013 appointment, Plaintiff reported her shoulder pain had dramatically improved as a result of trigger point injections to her neck.  (Tr. 750.)  On examination, Plaintiff had a full range of motion in her neck, a full range of motion in her right shoulder, no gross motor weakness in her right shoulder, positive impingement

signs, and negative labral loading.  (Tr. 750.)   Dr. Levine recommended trigger point injections in the cervical spine.  He stated that if Plaintiff continued to respond, then he would not recommend additional treatment.  (*Id.*)   However, Dr. Levine noted that he would recommend a more aggressive treatment plan for Plaintiff's shoulder if she did not respond. (*Id.*)

During Plaintiff's last recorded visit with Dr. Levine on May 20, 2013, she reported that her shoulder and arm pain had markedly improved.  (Tr. 749.)  However, she continued to have pain when lying on her right shoulder and reported symptoms that suggested ongoing C6 radiculopathy.  (*Id.*)   She reported pain in her right arm with repetitive overhead use, but it was "quite moderate."  (*Id.*)   Plaintiff had instability symptoms in the right shoulder.  (*Id.*)   On examination Plaintiff had a full range of motion in her neck and in both shoulders.  (*Id.*)   She had no motor weakness.  (*Id.*) Dr. Levine found evidence of a minor tendinopathy of the right shoulder with partial tears of the rotator cuff, and "evidence of resolving cervical radiculopathy post block."  (*Id.*) He advised Plaintiff that if her pain "markedly worsen[ed] she [was] a candidate for a diagnostic arthroscopy and either repair or debridement of the cuff."  (*Id.*)   Dr. Levine released Plaintiff to follow-up on an as needed basis.  (*Id.*)

### B.   Medical Opinions

#### 1.   Jerry Thomas, M.D.

As part of the initial disability determination, state agency reviewer Dr. Jerry Thomas, M.D., completed a physical capacities assessment form.   (Tr. 269-76.) Dr. Thomas's assessment was based on the mistaken belief that Plaintiff was last insured for disability insurance benefits through December 31, 2005. (Tr. 269.); *see Lester v. Chater*, 81 F.3d 821, 825 (9th Cir. 1996) (stating that a claimant seeking disability insurance benefits must establish that she was disabled prior to the date last insured). Plaintiff's date late insured was September 30, 2016. (Tr. 14, 129.)  Dr. Thomas assessed physical capacities consistent with light work.  (Tr. 270.)  Specifically, he determined that Plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry ten

pounds, stand or walk about six hours in an eight-hour workday, and sit for about six hours in an eight-hour work day.  (Tr. 270.)  He found no limitations in Plaintiff's abilities to push and pull, "other than as shown for lift and/or carry," and no limitations in her manipulative abilities.  (Tr. 271-72.)  He also found no limitations in Plaintiff's abilities to climb, balance, stoop, kneel, crouch, and crawl.  (Tr. 271.)  Dr. Thomas cited medical records from January to April 2012 to support his findings.  (Tr. 276.)

### 2.    Bill F. Payne, M.D.

In December 2012, Dr. Bill Payne, M.D., completed a case analysis as part of the reconsideration determination.  (Tr. 486.)  Dr. Payne mistakenly believed that Plaintiff's date last insured was December 31, 2005.  (Tr. 486.)  Based on that belief, he concluded there was no available medical evidence of record covering the period on or before that date.  (Id.)  Therefore, he determined there was "insufficient evidence to rate the Title II claim as of the [date last insured].  (Id.)

### 3.    Nurse Practitioner Coe

Nurse Practitioner (NP) Coe completed several assessments of Plaintiff's physical functional abilities.  (Tr. 353-55, 746.)  On October 12, 2012, NP Coe completed her first Medical Assessment of Ability to Do Work Related Physical Activities.  (Tr. 353-55.)  She opined that Plaintiff could lift or carry less than ten pounds, stand or walk less than two hours out of an eight-hour day, and sit for less than six hours out of an eight-hour day.  (Tr. 353.)  NP Coe concluded that these limitations were due to insertional tears of the right shoulder and disc protrusions of the cervical and lumbar spines.  (Tr. 353.)

On October 12, 2013, NP Coe completed a pain assessment.  (Tr. 351.)  She opined that Plaintiff had moderately severe pain, defined as pain that "seriously affects ability to function."  (Id.)  NP Coe found that the degree of pain could reasonably be expected to result from objective clinical or diagnostic findings, documented by her own treatment notes or elsewhere in the medical records.  (Tr. 351.)  NP Coe also opined that pain would constantly interfere with attention and concentration, with constant

deficiencies of concentration, persistence, or pace, resulting in failure to complete tasks in a timely manner.  (Tr. 351-52.)

On June 16, 2014, NP Coe completed updated assessments.  (Tr. 746.)  She found that Plaintiff could lift and carry less than ten pounds, stand and walk less than two hours in an eight-hour day, and sit less than six hours in an eight-hour day.  (*Id.*)  NP Coe identified Plaintiff's diagnosed impairments as right shoulder pain from insertional tears and cervical and lumbar disc protrusions.  (*Id.*)   NP Coe opined that Plaintiff had moderately severe pain, which "seriously affects ability to function," constantly interferes with attention and concentration, and causes constant deficiencies of concentration, persistence, or pace, resulting in failure to complete tasks in a timely manner.  (Tr. 744-45.)  NP Coe explained that the degree of pain could reasonably be expected to result from objective clinical or diagnostic findings, documented in her own treatment notes or elsewhere in the medical records.  (Tr. 744.)

**III.    The Administrative Hearing**

Plaintiff was fifty-years old as of the alleged disability onset date.  (Tr. 39.)  She had a ninth-grade education and past relevant work as a custodian.  (Tr. 39-40.)  At the administrative hearing, Plaintiff testified she could not work because of pain and muscle spasms in her neck and shoulders, and headaches.  (Tr. 42-43.)  Plaintiff testified that she also had chronic low back pain.  (Tr. 44.)  Plaintiff testified that although injections helped relieve her pain, it returned within hours.  (Tr. 46-47.)  Plaintiff testified that she could stand for up to twenty minutes and sit for up to forty minutes.  (Tr. 47.)  Plaintiff stated that in a typical day, she needed to lay down for about two to three hours.  (Tr. 49.)

Vocational expert Scott Nielson testified at the administrative hearing.  (Tr. 54.)  The ALJ asked Nielson to assume a hypothetical claimant who could lift and carry twenty pounds occasionally and ten pounds frequently, could stand or walk for six out of eight hours, sit for six out of eight hours, and for whom reaching overhead on the right side was limited to occasional.  (Tr. 54.)  In response, the vocational expert testified that such a claimant could not perform Plaintiff's past relevant work, but could perform

1   unskilled jobs at the light exertional level including cashier II, marker, and routing clerk.

2   (Tr. 54-55.)   The ALJ relied on those jobs to conclude that Plaintiff was not disabled.

3   (Tr. 22.)

4           The vocational expert concluded that an individual with the limitations in

5   NP Coe's November 2014 assessment (Admin. Hrg. Ex. 25F), would be unable to

6   perform any full-time work.  (Tr. 55.)  The vocational expert also found that an individual

7   with the limitations in NP Coe's October 2012 assessment would be unable to perform

8   full-time work.  (Tr. 56.)  The vocational expert further testified that the limitations to

9   which Plaintiff testified, including the need to lie down for two to three hours during an

10  eight-hour day, precluded sustained full-time work.  (*Id.*)

11  **IV.     The ALJ's Decision**

12          A claimant is considered disabled under the Social Security Act if she is unable

13  "to engage in any substantial gainful activity by reason of any medically determinable

14  physical or mental impairment which can be expected to result in death or which has

15  lasted or can be expected to last for a continuous period of not less than 12 months."

16  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard

17  for supplemental security income disability insurance benefits).   To determine whether a

18  claimant is disabled, the ALJ uses a five-step sequential evaluation process.

19  *See* 20 C.F.R. §§ 404.1520, 416.920.

20          **A.     The Five-Step Sequential Evaluation Process**

21          In the first two steps, a claimant seeking disability benefits must initially

22  demonstrate (1) that she is not presently engaged in a substantial gainful activity, and

23  (2) that her medically determinable impairment or combinations of impairments is severe.

24  20 C.F.R. §§ 404.1520(b) and (c), 416.920(b) and (c).  If a claimant meets steps one and

25  two, there are two ways in which she may be found disabled at steps three through five.

26  At step three, she may prove that her impairment or combination of impairments meets or

27  equals an impairment in the Listing of Impairments found in Appendix 1 to Subpart P of

28  20 C.F.R. Part 404.    20 C.F.R. §§ 404.1520(a)(4)(iii)  and  (d), 416.920(d).   If so, the

claimant is presumptively disabled.  If not, the ALJ determines the claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  At step four, the ALJ determines whether a claimant's RFC precludes her from performing her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant establishes this prima facie case, the burden shifts to the government at step five to establish that the claimant can perform other jobs that exist in significant number in the national economy, considering the claimant's RFC, age, work experience, and education.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If the government does not meet this burden, then the claimant is considered disabled within the meaning of the Act.

**B.     The ALJ's Application of the Five-Step Evaluation Process**

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 14.)  At step two, the ALJ found that Plaintiff had the following severe impairments: "[d]egenerative changes of the cervical and lumbar spine and right shoulder, obesity, and headaches (20 CFR 404.1520(c) and 416.920(c))."  (*Id.*)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment.  (Tr. 15.)

The ALJ found that Plaintiff had the residual functional capacity (RFC) to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)."  (Tr. 16.) However, the ALJ found that Plaintiff has the following limitations: she "can lift and carry 20 pounds occasionally and ten pounds frequently; can stand or walk for six hours out of eight; sit for six hours out of eight; occasionally climb stairs and ramps, ropes, ladders and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasionally reaching overhead with her right arm; [and she] should avoid concentrated exposure to unprotected heights, moving and dangerous machinery, and vibration."  (*Id.*)

The ALJ concluded that Plaintiff could not perform her past relevant work. (Tr. 21.)  However, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that she could perform other jobs that exist in significant numbers in the

national economy.  (Tr. 22.)  The ALJ determined that Plaintiff had not been under a disability, as defined in the Act, from February 10, 2012, through the date of his decision.  (Tr. 23.)  Therefore, the ALJ denied Plaintiff's application for a period of disability and disability insurance benefits and her application for supplemental security income.  (*Id.*)

## V.   Standard of Review

The district court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The district court reviews the Commissioner's final decision under the substantial evidence standard and must affirm the Commissioner's decision if it is supported by substantial evidence and it is free from legal error.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even if the ALJ erred, however, "[a] decision of the ALJ will not be reversed for errors that are harmless."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Substantial evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  In determining whether substantial evidence supports a decision, the court considers the record as a whole and "may not affirm simply by isolating a specific quantum of supporting evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted).  The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  "When the evidence before the ALJ is subject to more than one rational interpretation [the court] must defer to the ALJ's conclusion."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (citing *Andrews*, 53 F.3d at 1041).

/ / /

1  **VI.    Plaintiff's Claims**

2        Plaintiff raises the following claims: (1) the ALJ erred by assigning little weight to

3  NP Coe's opinion of Plaintiff's functional abilities; (2) the ALJ erred by rejecting

4  Plaintiff's symptom testimony; and (3) the ALJ erred by determining Plaintiff's RFC

5  "without any articulated support in the record."   (Doc. 23 at 1.)   The Commissioner

6  asserts that the ALJ's decision is free from harmful error and is supported by substantial

7  evidence.   (Doc. 24.)   As set forth below, the Court concludes that the ALJ erred by

8  rejecting NP Coe's opinions and that this error was not harmless.   Based on this error, the

9  Court reverses the Commissioner's decision.   Therefore, the Court does not address

10  Plaintiff's other claims.

11        **A.    The ALJ's Reasons for Assigning Little Weight to NP Coe's Opinion**

12        As stated in Section II.A.1, NP Coe provided assessments of Plaintiff's physical

13  functional limitations.   The ALJ noted that NP Coe completed four RFC assessments and

14  offered an opinion of Plaintiff's functional abilities.   (Tr. 19.)   The ALJ gave NP Coe's

15  opinion little weight because she is not an acceptable medical source, the assessments

16  were based on Plaintiff's subjective complaints, and they were inconsistent with

17  Dr. Thomas's assessment.[2]   (Tr. 19, 20.)   Plaintiff argues that these are not legally

18  sufficient reasons for rejecting NP Coe's opinions.   The ALJ also stated that he gave NP

19  Coe's opinion little weight because it was "not consistent with the record.   Other records

20  show that the claimant can do much more than this report assessed."   (Tr. 20.)   Plaintiff

21  does not specifically challenge this last rationale for the ALJ's decision.   (Doc. 23 at 19-

22  22; Doc. 25 at 3-5.)   Similarly, the Commissioner mentions this rationale, but does not

23  specifically discuss it.   (Doc. 24 at 7.)

24  _____

25        [2]   The Commissioner's brief includes additional rationale in support of the ALJ's
26  rejection of NP Coe's assessments, including that those assessments are on check box
    forms.   The ALJ did not include this reason in his opinion.   (Doc. 24 at 9.)   This Court's
    review is limited to "reasons and factual findings offered by the ALJ not post hoc
27  rationalizations that attempt to intuit what the adjudicator may have been thinking."   *Bray*
    *v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).   Accordingly, the
28  Court limits its analysis to the rationale and facts that the ALJ relied upon in support of
    his decision.

### 1.     Not an Acceptable Medical Source

The ALJ gave NP Coe's RFC assessments little weight because she was not an "acceptable medical source."   (Tr. 19, 20.)   Nurse practitioners are not considered "acceptable medical sources" under the Social Security Regulations (SSRs).   *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).   Rather, nurse practitioners are considered "other sources."   *Id.*   Other sources can provide evidence regarding the severity of a claimant's impairments and how they affect a claimant's ability to work.   *Garrison v. Colvin*, 759 F.3d 995, 1013. (9th Cir. 2014).   In determining whether a claimant is disabled, an ALJ must consider that evidence.   *See* 20 C.F.R. § 404.1513 (explaining that evidence may come from "other sources" that do not qualify as "acceptable medical sources.")

Opinions from other medical sources "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."   SSR 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).   "The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from" an "other medical source" because "'acceptable medical sources' 'are the most qualified health care professionals.'"   *Id.* at *5.   However, an opinion from an "other medical source" may outweigh the opinion of an "'acceptable medical source,'" including the medical opinion of a treating source."   *Id.*   An ALJ may reject evidence from other sources if the ALJ gives germane reasons for doing so.   *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Here, the ALJ erred by rejecting PA Coe's opinions on the basis that she was not an "acceptable medical source," because an ALJ must consider evidence from "other medical sources," including nurse practitioners, and give germane reasons for rejecting opinions from "other medical sources."   *See* SSR 06–03p, 2006 WL 2329939, at *2; *Molina*, 674 F.3d at 1111 (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).   The

ALJ's statement that he rejected NP Coe's opinions because she is not an acceptable medical source is legally insufficient.

**2. Opinions based on Plaintiff's Subjective Complaints**

The ALJ also gave NP Coe's RFC assessments little weight based on his conclusion that her assessments "were based on what [Plaintiff] told the nurse practitioner on three different occasions." (Tr. 19.)  The ALJ's opinion does not cite to evidence in the record to support that conclusion.  However, during the administrative hearing, the following exchange with Plaintiff took place:

> Q [ALJ].     As far as Nurse [sic] Koe [sic] is concerned, have you had some conversations with her as far as what you felt you could do and couldn't do, how long you could sit, stand, lift, that sort of thing?
>
> A [Plaintiff].  Yes.
>
> Q.     It appears from the record that there are probably three different times where you brought paperwork in for her to fill out, is that correct?
>
> A.     Yes. . . .
>
> Q [Counsel]. So did Nurse Koe [sic] ask you the questions on the form?
>
> A.     She will go back to whatever she, in her notes or something, she will refer back to that.  And then she will ask me certain questions, but she will always go back to – then she remember she had it on file already, so she will repeat whatever she have.
>
> Q.     She filled out some in the past?
>
> A.     Yes.
>
> Q.     Some assessments, and then she filled out some just very recently?
>
> A.     Yes.
>
> Q.     Okay. So she referred to her records, is that what you're saying?
>
> A.     Yes.
>
> Q.     Okay.  Did she ask you the specific questions that were on the forms and then fill out the form after each question, after you answered?
>
> A.     Well some of them, and then she did whatever she had asked me in between, and then she would look at her records and stuff.

(Tr. 52-53.)

The record does not support the ALJ's conclusion that NP Coe's RFC assessments were based solely "on what [Plaintiff] told her on three different occasions."  (Tr. 19.) Plaintiff's testimony at the administrative hearing indicates the she brought NP Coe RFC assessment forms to complete "three different times."  (*Id.*)  Plaintiff testified that NP Coe "asked her the questions on the form[s]" and consulted her treatment notes.  (*Id.*) As discussed in Section II.A.1, the administrative record includes numerous treatment notes from NP Coe.  Considering NP Coe's treatment history with Plaintiff and Plaintiff's testimony that NP Coe referred to her notes or records when completing the RFC assessment forms, the record does not support the ALJ's conclusion that NP Coe's opinions were based solely on Plaintiff's subjective complaints.

Therefore, the ALJ's conclusion that NP Coe's RFC assessments were based on Plaintiff's subjective complaints is not a legally sufficient reason for discounting NP Coe's opinions because the ALJ's conclusion is not substantiated by the record.  *See Widmark v. Barnhart*, 454 F.3d 1063, 1067-68 (9th Cir. 2006) (rejecting the ALJ's rationale when "such an inference cannot reasonably be drawn from the relevant facts in the record"); *but see Molina*, 674 F.3d at 1111 (affirming the ALJ's rejection of a physician assistant's [PA] opinion when the ALJ gave "several germane reasons for discounting [the PA's opinions] in favor of the conflicting testimony of Dr. Yost, and these reasons were substantiated by the record.").

### 3.    Inconsistent with Dr. Thomas's Opinion

The ALJ also gave NP Coe's opinions little weight because he found that those opinions were inconsistent with the Dr. Thomas's opinions.  (Tr. 19.)  Dr. Thomas, a non-examining physician, reviewed the medical records and completed an RFC assessment on June 20, 2012.  (Tr. 269-76.)  In contrast to the restrictive functional limitations that NP Coe assessed (Tr. 351-55l, Tr. 695-97, Tr. 744-48), Dr. Thomas assessed functional limitations consistent with light work.  (Tr. 270-73.)  He opined that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten

pounds, stand or walk six hours in and eight-hour day, and sit six hours in an eight-hour day.  (Tr. 270.)  He also found that Plaintiff was unlimited in her abilities to push and pull, reach, handle, finger, and feel.  (Tr. 270, 272.)  He found that Plaintiff was unlimited in her abilities to climb, balance, stoop, kneel, crouch, or crawl.  (Tr. 271.)  He further found that Plaintiff had no environmental limitations.  (Tr. 273.)  Although Dr. Thomas incorrectly identified Plaintiff's date last insured as December 31, 2005, the comments supporting his opinions indicate that he considered medical records after that date, including records from January to April 2012.[3]  (Tr. 269, 276.)

The ALJ found NP Coe's functional assessments inconsistent with the medical opinion of reviewing physician Dr. Thomas.  (Tr. 19.)  The Commissioner argues that as an acceptable medical source, Dr. Thomas's opinion warranted "greater weight." (Doc. 24 at 8 (citing SSR 06-03p, 2006 WL 2329939, at *5)).  The Commissioner cites SSR 06-03p to support this argument.  That regulation provides that "[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight."   SSR 06–03p, 2006 WL 2329939 at *5.  However, it also emphasizes that opinions from all medical sources must be weighed "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence . . . For example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion."  *Id.*

Other medical source NP Coe, treated Plaintiff from 2012 to 2014.  (Tr. 303, Tr. 458, Tr. 451-56, Tr. 449-50, Tr. 496-97, Tr. 855-56, Tr. 851-52, Tr. 845-46, Tr. 833-

---

[3]  Plaintiff asserts that the ALJ rejected the opinion of non-examining physician Dr. Payne because he incorrectly identified Plaintiff's date last insured and argues that similar rationale applies to Dr. Thomas's opinion because he also misidentified the date last insured.  (Doc. 23 at 22.)  Both Dr. Payne and Dr. Thomas misidentified the date last insured as December 31, 2005.  However, unlike Dr. Payne, Dr. Thomas considered current medical evidence that was in the record at the time he prepared his functional assessments in 2012.  (Tr. 269-76.)  Therefore, Dr. Thomas's misidentification of the date last insured did not materially affect his opinion.

34, Tr. 825-26, Tr. 820-23, Tr. 817-18, Tr. 812-13, Tr. 809-10.)  In contrast, Dr. Thomas never treated or examined Plaintiff, and only considered medical evidence up to the date of his opinion in July 2012, two years before the ALJ issued his decision.  *See Lester*, 81 F.3d at 831 ("[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining or a treating physician").

The ALJ rejected NP Coe's opinions in favor of Dr. Thomas's without considering these factors for weighing "other source" opinions.  (Tr. 19, 20); *see* 2006 WL 2329939, at *5.  Therefore, the Court finds the ALJ did not provide a germane reason for rejecting NP Coe's opinion in favor of non-examining physician Dr. Thomas's opinion.  *But see Molina*, 674 F.3d at 1111 (concluding that the ALJ permissibly rejected the opinion of a physician assistant on the ground that it was inconsistent with the opinion of an examining physician who was a specialist in psychiatry, the field relevant to the plaintiff's alleged disabling condition.)  Dr. Thomas's status as an acceptable source alone is not a germane reason for discounting NP Coe's opinions.  *See* 2016 WL 2329939, at *5.

### 4.    Inconsistency with the Record

Finally, after discussing NP Coe's 2014 functional assessment, the ALJ stated that he gave NP Coe's 2014 opinion little weight because it was "not consistent with the record.  Other records show that the claimant can do much more than this report assessed."  (Tr. 20.)  Neither Plaintiff nor the Commissioner specifically addresses this rationale.  (Doc. 23 at 19-22; Doc. 25 at 3-5; Doc. 24 at 7.)  Aside from Dr. Thomas's opinion, the ALJ did not specifically identify how NP Coe's 2014 opinion was inconsistent with any evidence in the record.  (Tr. 19, 20.)  Thus, in stating that "[o]ther records" showed that Plaintiff could do more than what NP Coe assessed, the ALJ may be referring again to Dr. Thomas's opinion.  (*See* Doc. 23 at 19-22, Doc. 24 at 7-9.)

Additionally, the Commissioner's brief states that the ALJ gave "at least one germane reason for discounting" NP Coe's opinion and then asserts that Dr. Thomas's

status as an acceptable medical source was a germane reason for accepting his opinion over NP Coe's.  (Doc. 24 at 7-8.)  The Commissioner identifies the ALJ's second germane reason for discounting NP Coe's opinion as the ALJ's conclusion that the opinion was based on Plaintiff's subjective complaints.  (*Id.* at 9.)  Therefore, the Court considers that ALJ's statement that NP Coe's assessment was inconsistent with the record to mean that NP Coe's 2014 assessment was inconsistent with Dr. Thomas's opinion.  As discussed in Section VI.A.3, that is not a legally sufficient reason for discounting NP Coe's opinion.[4]

### B.    Remand for Further Proceedings

The Court concludes the ALJ erred by discounting NP Coe's opinions.  This error was not harmless because the vocational expert testified that an individual with the limitations NP Coe assessed would be unable to perform sustained work.  (Tr. 55-56)  Plaintiff requests that the Court credit NP Coe's opinion as true and remand this matter for an immediate award of benefits.  (Doc. 23 at 29.)

Remand for an award of benefits is appropriate when: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether the rejected evidence is claimant's testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (footnote and citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (when evaluating whether further administrative proceedings would be useful, "we consider whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules.").  When

---

[4]   To the extent the ALJ rejected NP Coe's opinions as inconsistent with other evidence in the record, the Court finds that rationale legally insufficient because the ALJ did not identify the information in the record that with which NP Coe's opinion was inconsistent.

this test is met, the Ninth Circuit "take[s] the relevant testimony to be established as true and remand[s] for an award of benefits[,]" *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted), unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021 (citations omitted).

In this case, the Court finds that remand for an immediate award of benefits is inappropriate.  As to NP Coe's opinions regarding the limiting effects of Plaintiff's impairments, "an ALJ's failure to provide sufficiently specific reasons for rejecting the testimony of a claimant or other witness does not, without more, require the reviewing court to credit the claimant's testimony as true."  *Treichler*, 775 F.3d at 1106.  Thus, "only where 'there are no outstanding issues that must be resolved before a determination of disability can be made,' do we have discretion to credit a claimant's testimony as true and remand for benefits, and only then where 'it is clear from the record that the ALJ would be required to find [the claimant] disabled' were such evidence credited."  *Id.* (quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004)).

Here, Defendant has pointed to inconsistencies in Plaintiff's reports about the effectiveness of treatment to relieve her pain.  (Doc. 24 at 6); *see Treichler*, 775 F.3d 1090 (remanding for further proceedings where the record reflected inconsistencies related to the claimant's credibility and it was not clear on the record that the claimant was disabled).  During the administrative hearing, Plaintiff testified that pain relief from trigger point injections only last until she got home from Dr. Levine's office, or about an hour.  (Tr. 46-47.)  However, in April 2013, Plaintiff told Dr. Levine that "her shoulder pain dramatically improved with trigger point injections."  (Tr. 750.)  She also reported that she was able to use her arm "much more proficiently than previously."  (*Id.*)  Similarly, in May 2013, Plaintiff told Dr. Levine that after an injection the pain in her shoulder and arm was "markedly improved."  (Tr. 749.)  Considering these inconsistences in Plaintiff's testimony that bear on her severity of her symptoms, remand for an immediate award of benefits is inappropriate.

**VII.    Conclusion**

The Court finds that the ALJ erred in rejecting NP Coe's opinion and that error was not harmless.  Therefore, the Court remands this matter for further proceedings to reassess NP Coe's opinion concerning the limitations caused by Plaintiff's impairments. The ALJ may also reconsider Plaintiff's symptom testimony, the record as whole, and may reassess whether Plaintiff's RFC is appropriate.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is reversed and this matter is remanded for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Plaintiff and terminate this case.

Dated this 27th day of January, 2017.

Bridget S. Bade
United States Magistrate Judge